IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE THG HOLDINGS LLC, *et al.*, | : | Chapter 11 |
| | : | Case No. 19-11689 (JTD) |
| Debtors. | : | (Jointly Administered) |
| | : | |
| ALEX M. AZAR II, in his official capacity as Secretary, United States Department of Health and Human Services; and SEEMA VERMA, in her official capacity as Administrator, Centers for Medicare and Medicaid Services, | : | Civ. No. 19-2215 (RGA) |
| Appellants, | : | |
| v. | : | |
| TRUE HEALTH DIAGNOSTICS, LLC, | : | |
| Appellee. | : | |

**MEMORANDUM ORDER**

Before the Court is the Emergency Motion for Stay Pending Appeal (D.I. 1) ("Emergency Motion") filed by appellant, the United States, on behalf of Alex M. Azar, II, Secretary of the United States Department of Health and Human Services, and Seema Verma, Administrator for the Centers for Medicare and Medicaid Services (together "CMS"), and the Defense Health Agency ("DHA") of the U.S. Department of Defense (together with CMS, the "Government"), seeking a stay pending appeal of the Bankruptcy Court's November 27, 2019 order approving the above-captioned Debtors' disclosure statement and confirming the Debtors' proposed chapter 11 plan of liquidation (B.D.I. 531)[1] (the "Confirmation Order"). The Debtors have filed an opposition to the Emergency Motion (D.I. 6), and the administrative agent under the Debtors' post-petition financing

---

[1] The docket of the Chapter 11 cases, captioned *In re TGH Holdings LLC, et al.*, No. 19-11689 (JTD) (Bankr. D. Del.), is cited herein as "B.D.I. __." The docket of the adversary proceeding, captioned *Azar, et al. v. True Health Diagnostics, LLC*, Adv. No. 19-50280 (JTD) (Bankr. D. Del.), is cited herein as "Adv. D.I. __."

1

agreement[2] has filed a joinder to the Debtors' opposition (D.I. 7). The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. For the reasons set forth below, the Emergency Motion is denied.

1. **Background.** On July 30, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On the Petition Date, debtor True Health Diagnostics, LLC ("THD") filed a complaint and a motion for preliminary injunction against the Government to enforce the automatic stay and enjoin the Government from withholding Medicare payments owed to THD in bankruptcy. (*See* Adv. D.I. 1, 3, 4). The parties fully briefed the motion for preliminary injunction and, on August 22, 2019, the Bankruptcy Court held a preliminary injunction hearing. (Adv. D.I. 21, 22).

2. On August 29, 2019, the Bankruptcy Court issued a memorandum opinion granting THD's motion for preliminary injunction and entered the Payment Order. *In re THG Holdings LLC*, 604 B.R. 154 (Bankr. D. Del. 2019). The Bankruptcy Court rejected the Government's argument that the Bankruptcy Court lacked jurisdiction to enforce the automatic stay and enjoin the Government from continuing to withhold Medicare payments during the bankruptcy because THD had not exhausted its administrative remedies under the Medicare statute. *See id*. at 158-59. The Bankruptcy Court also held that THD's right to receive Medicare payments was "indisputably" property of its bankruptcy estate under 11 U.S.C. § 541(a), and the Government's withholding of such payments after THD's bankruptcy filing was a violation of the automatic stay under 11 U.S.C. § 362(a). *See id*. at 160. The Bankruptcy Court rejected the Government's contention that

---

[2] *See* Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection Pursuant to 11 U.S. C. §§ 361, 362, 363, and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c). (B.D.I. 233).

2

withholding Medicare payments to THD fit within the narrow police power exception to the automatic stay under 11 U.S.C. § 362(b)(4). *See id.* at 161. The Bankruptcy Court entered an order requiring that "to the extent not already remitted to True Health, [the Government] shall, within five (5) business days of entry of this Order Enforcing the Automatic Stay, deliver to True Health one hundred percent (100%) of all funds Defendants have withheld from True Health on and after the Petition Date." (Adv. D.I. 28 (referred herein as the "Ordered Payments")).

3. Two weeks after the entry of the Payment Order, the Government sought a stay pending appeal of the Payment Order in the Bankruptcy Court. (*See* Adv. D.I. 33). The Bankruptcy Court denied the Government's request for a stay pending appeal, finding that the Government "ha[s] not established a likelihood of success on the merits given the Third Circuit's opinion in *University Medical Center*,[3] that is binding precedent" and finding no irreparable harm to the Government in denying the motion, recognizing that "[t]hey will still have all of the remedies that they have as a creditor in a bankruptcy case." (Adv. D.I. 270, 9/20/19 Hr'g Tr. at 38:23-39:13).

4. Thereafter, the Government sought a stay pending appeal of the Payment Order in this Court. This Court agreed with the Bankruptcy Court that the Government failed to demonstrate a likelihood of success on appeal to warrant a stay and failed to establish any irreparable harm to the Government in the absence of a stay. (*See Azar v. True Health Diagnostics, LLC*, Civ. No. 19-1714-RGA, D.I. 31, 10/16/19 Hr'g Tr. at 38:13-18).

5. Thereafter, the Bankruptcy Court approved sales of substantially all of the Debtors' business on September 20, 2019 and October 30, 2019. (*See* B.D.I. 271, 432). In connection with winding down the Debtors' estates, the Debtors engaged in negotiations with their secured lenders and the official committee of unsecured creditors appointed by the Office of the United States Trustee to formulate terms of a liquidating chapter 11 plan. (B.D.I. 508). After interim approval by

---

[3] *In re University Medical Center*, 973 F.2d 1065 (3d Cir. 1992).

the Bankruptcy Court, votes on the Plan were solicited from creditors, and the Plan was overwhelmingly accepted by all classes of claims entitled to vote. (*See id.*) Classes 3 and 4 in the Plan, which represent secured claims against the Debtors entitled to vote, unanimously accepted the Plan. (*See id.*) Class 5, which represents holders of unsecured claims, accepted the Plan by a wide margin with 94.74% in number and 94.45% in amount voting to accept the Plan. (*See id.*)

6. On November 26, 2019, the Bankruptcy Court held a hearing (the "Confirmation Hearing") to consider the final approval of the Debtors' disclosure statement and final confirmation of portions of the Plan to which the Government had objected.

7. Prior to the Confirmation Hearing, the Debtors and the Government entered into a stipulation governing the evidence to be admitted at the Confirmation Hearing (B.D.I. 498) (the "Stipulation"). Pursuant to the Stipulation, the Government agreed that it would not introduce any evidence challenging the Debtors' evidence that they provided valuable and necessary services in exchange for the Ordered Payments. (*See* Stipulation, ¶ 8). The Government also stipulated that it would not offer any evidence of misconduct by the Debtors or evidence supporting an administrative expense claim. (*See id.*)

8. As noted by the Bankruptcy Court, "The Government, in its closing argument, agreed that it was limiting its objections to feasibility, good faith, and the scope of the releases being provided under the terms of the Plan." (D.I. 6-2, 11/26/19 Hr'g Tr. at 75:1-4). Following oral argument, the Bankruptcy Court overruled each of the Government's remaining objections. (*Id.* at 75:1-81:1). On November 27, 2019, the Bankruptcy Court entered the Confirmation Order in accordance with its ruling.

9. The stay of the Confirmation Order by various Federal Rules of Bankruptcy Procedure was partially waived and set to expire on December 4, 2019 at 11:59 p.m. (Prevailing Eastern Time). (B.D.I. 531 at ¶ 43). Upon the Government's request for a hearing date on a motion

4

for stay pending appeal, the Bankruptcy Court stated that it would deny any such motion without a hearing, thus rendering impractical the filing of any request for stay pending appeal relief in that court. (*See* D.I. 6-2, 11/26/19 Hr'g Tr. at 82:13-83:1). On December 1, 2019, the Government filed its Notice of Appeal (D.I. 2) with respect to the Confirmation Order together with the Emergency Motion (D.I. 1). The Court set an answering deadline of December 3, 2019 (D.I. 4) with respect to the Emergency Motion, and extended the stay contained in the Confirmation Order for an additional 24 hours to December 5, 2019 at 11:59 p.m. (Prevailing Eastern Time) (D.I. 8).

10. **Jurisdiction.** Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). The Plan Confirmation Order is a final order.

11. **Discussion.** "The granting of a motion for stay pending appeal is discretionary with the court." *In re Trans World Airlines, Inc.*, 2001 WL 1820325, at *2-3 (Bankr. D. Del. Mar. 27, 2001). The Government bears the burden of proving that a stay of the Confirmation Order is warranted based on the following criteria: (1) whether the movant has made "a strong showing" that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies. *Republic of Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991). The most critical factors, according to the Supreme Court, are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm – the latter referring to harm that cannot be prevented or fully rectified by a successful appeal. *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009). The Court's analysis should proceed as follows:

> Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) [it] will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a 'sliding scale' approach. However, if the movant does not make the requisite showings on

5

either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis.

*Revel AC*, 802 F.3d at 571 (emphasis in text) (internal quotations and citations omitted).

12. ***Likelihood of success on the merits.*** As to the first factor, the Government has not met its burden of making "a strong showing" that it is likely to succeed on the merits. Essentially, the Government is seeking a stay of the Confirmation Order pending its appeal of the Payment Order. The Government argues that (1) the Debtors' failure to include an avenue for recovery if the Government succeeds in its appeal of the Payment Order was a "deliberate attempt to take money from the United States and pay it to other creditors in violation of the good faith requirement of § 1129(a)(3)," and (2) "the absence of sufficient funding to repay the United States in the likely event that it succeeds on appeal renders the Plan infeasible." (*See* D.I. 1 at 5). Debtors argue that the Emergency Motion (1) is based upon arguments already rejected by the Bankruptcy Court and this Court in the context of a stay pending appeal of the Payment Order, and (2) ignores that the Bankruptcy Court's factual findings were based in large part upon the Government's Stipulation that it would provide no evidence on the dispositive issues decided at the Confirmation Hearing.

13. Underlying this appeal is the Government's argument that the Bankruptcy Court did not have jurisdiction to enforce the automatic stay and enter the Payment Order. The Government argues that because it will be successful in its appeal of the Payment Order, the Government will be entitled to a return of the Ordered Payments as an administrative claim, and the Plan does not provide for such treatment. The Government is unlikely to succeed on the merits of this argument for several reasons.

14. First, in *University Medical Center*, the Third Circuit held that the Bankruptcy Code provides an independent basis for a bankruptcy court to exercise jurisdiction to decide the precise issue in this case – whether the automatic stay under section 362(a) prohibits the withholding of

6

Medicare payments to a healthcare provider in bankruptcy. *University Medical Center*, 973 F.2d 1065, 1072 (3d Cir. 1992). The Third Circuit concluded that this issue arises under the Bankruptcy Code, not the Medicare statute, and thus bankruptcy courts have jurisdiction to enforce the automatic stay to prevent the Government from withholding Medicare payments in bankruptcy. *See id.* at 1073. Here, the Bankruptcy Court and this Court followed binding precedent, finding that the Bankruptcy Court had jurisdiction to enforce the automatic stay under 28 U.S.C. §§ 157 and 1334.

15. The Government's attempt to rely on the Third Circuit case *In re Denby-Peterson*, 941 F.3d 115 (3d Cir. 2019), must be rejected. *Denby-Peterson* did not mention *University Medical Center*. Additionally, *Denby-Peterson* was not issued by an *en banc* panel that could overrule *University Medical Center* under the Third Circuit's internal guidelines. *See Internal Operating Procedures of the United States Court of Appeals for the Third Circuit* (2018) § 9.1. Finally, the Court is persuaded that the Bankruptcy Court aptly distinguished *Denby-Peterson* in its decision confirming the Plan:

> The situation here is very different. The Government took action post-petition to obtain possession of the property of the debtors' estate by withholding payments for work performed by the debtors post-petition. Every time an invoice was submitted for payment, the Government made the determination not to pay that invoice. That is action post-petition; and, therefore, ... the ruling in *Denby- Peterson* is simply not applicable here.

11/26/19 Hr'g Tr. at 76:5-12. The Government remains unlikely to prevail on its underlying appeal of the Payment Order, as *University Medical Center* remains good law and binding precedent that recognizes the bankruptcy court's jurisdiction to enforce the automatic stay to prevent the Government from withholding Medicare payments from the Debtors. As the Emergency Motion is based upon an argument already rejected by this Court and the Bankruptcy Court, the argument must fail because the Government has not offered any reason to disturb the law of the case.

16. Second, the Government is unlikely to succeed on the merits of its appeal of the Confirmation Order. The Debtors have demonstrated that the Plan was proposed in good faith, and

7

the record reflects that the Government failed to introduce evidence to the contrary. Under Third Circuit law, "good faith" requires that a "plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and the purposes of the Bankruptcy Code.'" *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999) (quoting *In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988)); *see also In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) ("[C]ourts have held a plan is to be considered in good faith "if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.").

17. While the Emergency Motion repeatedly cites the doctrines of "restitution and unjust enrichment," it fails to explain how those principles have anything to do with whether this Plan was proposed in good faith. The Government argues that "it is inconsistent with the Code's objectives for a debtor, by deliberately seeking to moot an appeal, to prevent a creditor from vindicating its property rights under the Code." (D.I. 1 at ¶ 15). However, the Government failed to introduce any evidence that the Debtors were "deliberately seeking to moot" the Payment Order Appeal. The evidence introduced at the Confirmation Hearing supports a determination that the Plan was proposed with the honest intention of maximizing value for the Debtors, their estates and their creditors. (*See* B.D.I. 507 (memorandum of law in support of plan confirmation); D.I. 6-3 (declaration in support of plan confirmation)). The record reflects that this evidence is uncontroverted. (*See* D.I. 6-3 at ¶¶ 12, 31; 11/26/19 Hr'g Tr. at 80:17-22). In particular, the Plan provides for the creation of a litigation trust that is the best chance of recovery for unsecured creditors who would otherwise receive nothing on account of their claims.

18. Moreover, despite holding the burden of proof under section 503(b) of the Bankruptcy Court, the Government fails to explain how it is entitled to the return of the Ordered Payments under the Bankruptcy Code if the Payment Order is reversed. The Bankruptcy Court

8

recognized that the Government was attempting to circumvent the Bankruptcy Code's priority scheme and secure a finding that it would be automatically entitled to a return of the Ordered Payments if it were successful in the Payment Order appeal:

> The Government continues that it should be able to recover payments without showing, under Section 503(b) of the Code, that the payments are an administrative claim. Notably, the Government cites no authority that it should be exempt from that provision of the Code, and the Court is not aware of any such exemption for the Government.

(11/26/19 Hr'g Tr. at 78:5-10). The Bankruptcy Court found that the Ordered Payments were earned by the Debtors during the bankruptcy cases, which clearly undermines the Government's theory that it would be entitled to the return of the Ordered Payments:

> And I would also conclude that, in this case, contrary to the Government's position, the post-petition payments, if reversed, would not constitute unjust enrichment because the payments … made by the Government here were for work performed post-petition, and the Government has stipulated, for purposes of the confirmation hearing, that the debtors did not engage in any post-petition fraud or receive any post-petition overpayments; therefore, that objection is overruled.

(11/26/19 Hr'g Tr. at 76:20-77:3). The record reflects that the only testimony at the hearing was that the Ordered Payments were made for services actually rendered. (*See* 11/26/19 Hr'g Tr. at 12:9-13:24, 21:7-16, 21:21-25).

19. Finally, the Government is not likely to prevail on its argument that the Plan was not feasible because it did not provide a mechanism for the return of the Ordered Payments. As noted above, the Government suggests no valid theory by which the Debtors could be ordered to return the Ordered Payments if the Government is successful in the Adversary Appeal. The Government must provide evidence that they are claims entitled to administrative expense priority. *See In re FRG, Inc.*, 121 B.R. 451, 456 (Bankr. E.D. Pa. 1990) (the allocation of the burdens of proofs in a claim estimation is the same as in deciding objections to proofs of claim); *see also In re Cook Inlet Energy LLC*, 583 B.R. 494, 501 (B.A.P. 9th Cir. 2018) ("Administrative priority claims under § 503(b)(1)(A) are . . . not deemed allowed as priority claims."). The record reflects that the

Government did not provide any such evidence. Absent a statutory mechanism to do so, such as proving an entitlement to a secured claim or an administrative expense, the Government has no automatic right to payment if it succeeds in its appeal. While the Government may have a claim against the Debtors' estate, that claim is not entitled to priority under the Bankruptcy Code. As the Bankruptcy Court recognized in its ruling:

> The Government's claim to recover … is, in effect, a claim to recover for pre-petition claims for alleged fraud and overpayments that occurred pre-petition, and therefore constitute pre-petition claims.

(11/26/19 Hr'g Tr. at 77:25-78:4). The Government is unlikely to prevail on this aspect of its appeal of the Confirmation Order because the Government did not raise any feasibility issues at the Confirmation Hearing and failed to provide any evidence or legal authority supporting its argument that the Debtors will ever have to pay the Government an administrative expense claim.

20. ***Irreparable harm absent a stay.*** The Government has also failed to establish that it will suffer irreparable harm in the absence of a stay. To do so, the Government must establish a resulting injury "that cannot be redressed by a legal or equitable remedy." *Instant Air Freight Co. v. C.F. Air Freight, Inc.,* 882 F.2d 797, 801 (3d Cir. 1989). The Government argues that, once the Plan becomes effective, it is likely to be irreparably harmed absent a stay because there will be no meaningful opportunity to adjudicate the Payment Order Appeal.

21. First, the Government argues that it is unlikely to be paid, even if the Payment Order is reversed on appeal, because the Bankruptcy Court denied the Government's request to set a reserve covering the Ordered Payments in the Plan, and the Plan does not provide for administrative priority treatment of such a claim. Although the Government claims that the Debtors will be required to repay the Government if it prevails in the Adversary Appeal, as noted above, the Government does not explain which provisions of the Bankruptcy Code would require the return of the Ordered Payments. To be returned in full, the Ordered Payments would have to qualify as an

10

administrative expense of the Debtors' estates. Unlike unsecured claims governed by section 502 of the Bankruptcy Code, "requests for payment of administrative expenses are not entitled to the presumption of correctness that is accorded claims prepetition creditors assert through proofs of claim. An entity seeking allowance of an administrative expense has the burden of proof." 4 COLLIER ON BANKRUPTCY ¶ 503.04[1] (Richard Levin & Henry J. Sommer eds., 16th ed.). The law of this district is clear, "The claimant bears the ultimate burden of establishing a valid administrative expense claim by a preponderance of the evidence." *In re SRC Liquidation, LLC*, 573 B.R. 537, 540 (Bankr. D. Del. 2017). Here, the Government stipulated not to offer any proof of an administrative expense claim in connection with its objection to the entry of the Confirmation Order. (*See* B.D.I. 498, ¶ 8). Having failed to assert a basis for administrative priority treatment in the first place, the Government cannot assert the Plan's failure to accord such treatment as irreparable harm.

22. Second, the Government argues, the Debtors will "substantially consummate" the Plan as soon as the Plan becomes effective, creating a risk that the Government might be unable even to have its arguments heard on the merits due to the doctrine of "equitable mootness." (D.I. 1 at 5). The Government is apparently arguing that the Confirmation Order would make the Payment Order appeal equitably moot. However, even if the implementation of the Confirmation Order were potentially to moot the Payment Order appeal, "the possibility that an appeal may become moot does not alone constitute irreparable harm for purposes of obtaining a stay." *In re Color Spot Holdings, Inc.*, 2018 WL 3996938, at *3 (D. Del. Aug. 21, 2018) (citing *Regal Ware, Inc. v. Global Home Prods., LLC*, 2006 WL 2381918, at *1 (D. Del. Aug. 17, 2006)). Additionally, "a purely economic injury, compensable in money, cannot satisfy the irreparable injury requirement" unless "the potential economic loss is so great as to threaten the existence of the movant's business." *Id.* at *4.

11

23. ***Balance of the harms.*** According to the Government, the Debtors will not be harmed by a stay of the Confirmation Order and effectiveness of the Plan because this is a liquidating case, with the majority of the anticipated recovery to creditors dependent upon the outcome of future litigation, which will likely take years for the litigation trust established by the Plan to pursue. (D.I. 1 at 15-16). The Government argues in the alternative that the Court may "[t]emporarily delay[]" distributions to creditors until the Payment Order appeal is adjudicated. (*See id.* at 17). The Court disagrees. The Government has appealed the Confirmation Order on the basis that it was entered in violation of the good faith and feasibility requirements of the Bankruptcy Code, and the Government presents no authority by which the Court could stay certain distributions contemplated by the Plan pending an appeal of the Plan's validity. As Debtors point out, the Plan embodies a deal between the Debtors, the Debtors' secured lenders, and the official committee of unsecured creditors appointed in the Debtors' cases, and provides for funding of litigation trust distributions to creditors. (D.I. 6 at 22 ("requiring the various parties to fund the liquidating trust and otherwise implement some of the compromises and settlements embodied in the Plan before allowing the liquidating trust to make distributions and implement the remaining compromises and settlements embodied in the Plan impermissibly destroys the various parties' consideration provided for such compromises and settlements."). Additionally, allowing the Plan to become effective without allowing for distributions on account of allowed administrative expense and priority claims would violate the terms of the Plan, *see* Plan §§ 6.1-6.4, and would violate the Bankruptcy Code, which requires the satisfaction of such claims as of the effective date of the Plan. *See* 11 U.S.C. § 1129(a)(9).

24. The record reflects that the Debtors had no post-petition funding as of December 4, 2019, and, absent the occurrence of the effective date of the Plan, the litigation trust established by the Plan to pursue creditor recoveries will not be funded. The Court concludes that any further stay

of the Confirmation Order may result in harm to creditors and that this harm outweighs the potential harm to the Government.

25. **Public interest.** The Government argues that the public has an interest in protecting the programmatic and fiscal integrity of the Medicare system, and that allowing a company that is subject to a long and ongoing fraud investigation to thwart consideration of an appeal of the Payment Order would undermine public trust in the Medicare system and in the Government's law enforcement abilities. (D.I. 1 at 16). Debtors simply respond that the Government's true motive for obtaining an emergency stay pending appeal is to protect its pecuniary interest and elevate its status as an unsecured creditor of the Debtors' bankruptcy estates to that of an administrative creditor. (D.I. 6 at 21).

26. The Court does not doubt that the Government's motives for both appeals are entirely in line with protecting the integrity of the Medicare system and the Government's law enforcement abilities. However, "consideration of [the four] factors by the district court requires a 'delicate balancing.'" *Revel AC*, 802 F.3d at 570 (quoting *Delaware River Port Auth. v. Transamerican Trailer Transport, Inc.,* 501 F.2d 917, 920 (3d Cir. 1974)). In situations where, as here, "considerable injury will result from either the grant or denial of a preliminary injunction, these factors [*i.e.,* the balance of harms and where the public interest lies] to some extent cancel each other and greater significance must be placed upon the likelihood that each party will ultimately succeed on the merits of the litigation." *Delaware River Port Auth.*, 501 F.2d at 924. As the Court finds that the Government is unlikely to succeed on its challenges to plan confirmation or its underlying appeal of the Payment Order, the Court is not persuaded that these general public interest considerations are sufficient to outweigh the Government's weak showing regarding its likelihood of success on the merits.

27. **Conclusion.** The Bankruptcy Court's ruling is consistent with existing precedent, and the Government has failed to establish that it will suffer irreparable harm in the absence of a stay.

NOW, THEREFORE, it is HEREBY ORDERED that the Emergency Motion (D.I. 1) is DENIED.

Entered this 5 day of December, 2019.

_____
United States District Judge