IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE THGH LIQUIDATING LLC, *et al.*, | : | Chapter 11 |
| | : | Case No. 19-11689 (JTD) |
| Liquidating Debtors. | : | (Jointly Administered) |
| _____ | : | |
| ALEX M. AZAR II, in his official capacity as | : | |
| Secretary, United States Department of Health | : | |
| and Human Services; and SEEMA VERMA, in her | : | |
| official capacity as Administrator, Centers for | : | |
| Medicare and Medicaid Services, | : | Civ. No. 19-2215-RGA[1] |
| | : | |
| Appellants, | : | |
| v. | : | |
| | : | |
| THGH LIQUIDATING LLC, *et al.,* | : | |
| | : | |
| Appellees. | : | |

## **MEMORANDUM OPINION**

Joseph H. Hunt, Assistant Attorney General; David C. Weiss, United States Attorney; Ellen W. Sleights, Assistant United States Attorney, Wilmington Delaware; Ruth A. Harvey, Lloyd H. Randolph, Seth B. Shapiro, Andrew Warner, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., attorneys for appellant, the United States.

Derek C. Abbott, Curtis S. Miller, Daniel B. Butz, Morris Nichols Arsht & Tunnell LLP, Wilmington, Delaware, attorneys for appellees, the TH Liquidating Trust and the Liquidating Debtors.

September 9, 2020

---

[1] The parties inconsistently caption this case. I have adopted Appellees' version. (D.I. 18).

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Appellants, Alex M. Azar II, as Secretary of the United States Department of Health and Human Services ("HHS"), and Seema Verma, as Administrator of the Centers for Medicare and Medicaid Services ("CMS," and, together with HHS, the "Government") have appealed the plan confirmation order, dated November 27, 2019 (D.I. 1-1)[2] ("Confirmation Order"), entered in the Chapter 11 cases of True Health Diagnostics, LLC ("True Health") and certain of its affiliates ("Debtors").  For the reasons set forth below, the Confirmation Order is affirmed.

**I.      BACKGROUND**

**A.      The Chapter 11 Cases and Adversary Proceeding**

On May 30, 2017, True Health received a Notice of Suspension of Medicare Payments dated May 26, 2017 (the "2017 Suspension Notice") from CMS.  (Adv. D.I. 1).  The 2017 Suspension Notice informed True Health that CMS had suspended 100% of Medicare payments to True Health as of May 25, 2017 pursuant to 42 C.F.R. § 405.371(a)(2) on the basis of "credible allegations of fraud," which the letter explains can come from "any source" including "fraud hotline complaints."  The 2017 Suspension Notice cited eight specific claims submitted over a one-year period that did not comply with Medicare guidelines.  The eight claims represent 0.008% of all claims submitted by True Health to Medicare during the relevant time period.  On June 13, 2019, True Health received a second suspension notice (the "2019 Suspension Notice") from CMS imposing another 100% payment suspension of Medicare payments to True Health. This second suspension was based upon five of the same claims – all with 2017 service dates –

---

[2] Citations to docket items are to the docket in this case unless otherwise indicated. The docket of the Chapter 11 cases, captioned *In re TGH Holdings LLC,* No. 19-11689 (JTD) (Bankr. D. Del.), is cited as "B.D.I. __."  The docket of the adversary proceeding, captioned *Azar. v. True Health Diagnostics, LLC*, Adv. No. 19-50280 (JTD) (Bankr. D. Del.), is cited as "Adv. D.I. __."

that were reviewed as part of the original 2017 suspension and investigation. *Id*.

On July 30, 2019 (the "Petition Date"), True Health and certain affiliates filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. True Health also initiated an adversary proceeding by filing a complaint and moving for a preliminary injunction against the Government to enforce the automatic stay and to enjoin the Government from withholding Medicare payments for post-petition services rendered by True Health. (*See* Adv. D.I. 1, 3, 4).

  **B.**  **The Payment Order and Appeal**

On August 29, 2019, the Bankruptcy Court granted the motion for preliminary injunction. *True Health Diagnostics LLC v. Azar (In re THG Holdings LLC)*, 604 B.R. 154 (Bankr. D. Del. 2019); *see* Adv. D.I. 28 (the "Payment Order"). The Bankruptcy Court held that it had jurisdiction under the Third Circuit's decision in *University Medical Center v. Sullivan (In re University Medical Center)*, 973 F.2d 1065 (3d Cir. 1992) to enjoin CMS from withholding Medicare payments from True Health in bankruptcy. 604 B.R. at 159. The Bankruptcy Court further held that "the post-petition Medicare reimbursements are indisputably property of the estate" under § 541(a) of the Bankruptcy Code, and that CMS's withholding of such payments after True Health's bankruptcy filing was a violation of the automatic stay under § 362(a) of the Bankruptcy Code. *Id*. at 160-61.

The Bankruptcy Court rejected the Government's contention that withholding Medicare payments to True Health fit within the police power exception to the automatic stay under § 362(b)(4) of the Bankruptcy Code. *Id*. at 161. Prior to the hearing on the preliminary injunction motion, the Government represented to the Bankruptcy Court that it would not submit any evidence at the hearing. *Id*. at 160 n.3. Notwithstanding that agreement, at the hearing the Government asserted that there were post-petition fraud allegations that were being investigated and attempted to introduce declarations. The Court sustained True Health's objection to the

introduction of the declarations. (*See* Adv. D.I. 25 at 28:1-29:16). Accordingly, the Bankruptcy Court entered the Payment Order, which, among other things, required the Government to continue making Medicare payments owed to True Health on or after the Petition Date ("Ordered Payments"). (*See* Adv. D.I. 28). The Payment Order was set to expire on the earlier of (a) entry of a final judgment in the adversary proceeding, or (b) an order terminating the relief granted under the Order. (*See id.*)

On September 12, 2019, the Government filed a timely notice of appeal of the Payment Order. (*Azar v. True Health Diagnostics, LLC*, Civ. No. 19-1714-RGA, D.I. 1). The Bankruptcy Court and I both denied stays pending appeal. (*Id.*, D.I. 9 at 2; D.I. 31 at 33-41). I later dismissed the interlocutory appeal. (*Id.*, D.I. 48, 49).

Each party moved to dismiss the adversary proceeding. The Bankruptcy Court entered an order denying both motions to dismiss on July 7, 2020. (Adv. D.I. 93, 94). Thus, the adversary proceeding is pending.

        **C.**        **The Confirmation Order and Appeal**

The Bankruptcy Court approved sales of substantially all of the Debtors' business on September 20, 2019 and October 30, 2019. (*See* B.D.I. 271, 432). In connection with winding down the Debtors' estates, the Debtors engaged in negotiations with their secured lenders and the official committee of unsecured creditors to formulate terms of a liquidating chapter 11 plan (B.D.I. 508) (as amended, the "Plan"). After interim approval by the Bankruptcy Court, votes on the Plan were solicited from creditors, and the Plan was overwhelmingly accepted by all classes of claims entitled to vote. (*See id.*) Classes 3 and 4 in the Plan, which represent secured claims against the Debtors entitled to vote, unanimously accepted the Plan. (*See id.*) Class 5, which represents holders of unsecured claims, accepted the Plan by a wide margin. (*See id.*)

On November 26, 2019, the Bankruptcy Court held a confirmation hearing to consider

final approval of the Debtors' disclosure statement and final confirmation of portions of the Plan to which the Government had objected.  Prior to the confirmation hearing, the Debtors and the Government entered into a stipulation governing the evidence to be admitted at the confirmation hearing (B.D.I. 498) (the "Stipulation").  Pursuant to the Stipulation, the Government agreed that it would not introduce any evidence challenging the Debtors' evidence that they provided valuable and necessary services in exchange for the Ordered Payments.  (*See* Stipulation, ¶ 8).  The Government also stipulated that it would not offer any evidence of misconduct by the Debtors or evidence supporting an administrative expense claim.  (*See id*.)

As noted by the Bankruptcy Court, "The Government, in its closing argument, agreed that it was limiting its objections to feasibility, good faith, and the scope of the releases being provided under the terms of the Plan." (D.I. 6-2 at 75:1-4).  Following oral argument, the Bankruptcy Court overruled each of the Government's remaining objections.  (*Id*. at 75:1-81:1).  On November 27, 2019, the Bankruptcy Court entered the Confirmation Order in accordance with its ruling.  (D.I. 1-1).  The Bankruptcy Court stated that it would deny any motion for a stay without a hearing.  (*See* D.I. 6-2 at 82:13-83:13).

On December 1, 2019, the Government filed a notice of appeal with respect to the Confirmation Order together with an emergency motion for stay pending appeal.  (D.I. 1, 2).  On December 5, 2019, I issued an order denying the emergency motion.  (D.I. 9).  The merits of the appeal are fully briefed.  (D.I. 16, 18, 20).  The Court did not hear oral argument because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

**II.     JURISDICTION AND STANDARD OF REVIEW**

Appeals from the Bankruptcy Court to this Court are governed by 28 U.S.C. § 158. District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and

decrees." 28 U.S.C. § 158(a)(1). The Confirmation Order is a final order. The standard of review is *de novo* for legal issues and clearly erroneous for factual determinations. *In re Global Industrial Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) (en banc). The Government raises three issues on appeal, and it asserts this Court's review is *de novo*. Debtors do not challenge this assertion. Thus, although I have some reservations about whether the feasibility and good faith issues (IV.B and IV.C *infra*) are entirely legal, I treat all issues raised by the Government as being subject to *de novo* review.

### III. PARTIES' CONTENTIONS

The Government contends that the Bankruptcy Court erred in confirming the plan because it ignored the Government's argument that the Payment Order was entered in contravention of *In re Denby-Peterson*, 941 F.3d 115 (3d Cir. 2019), a decision that was issued by the Third Circuit two months after the entry of the Payment Order.

The Government further contends that the Bankruptcy Court erred in determining that the Plan was feasible, as required under § 1129(a)(11) of the Bankruptcy Code, and submitted in good faith as required under § 1129(a)(3) of the Bankruptcy Code, because the Debtors will lack funds to return the Ordered Payments in full upon reversal of the erroneously entered Payment Order.

Finally, because there was no stay of the Confirmation Order, the Plan became effective and was substantially consummated on December 6, 2019, and True Health contends that the appeal is now equitably moot and should be dismissed.

### IV. ANALYSIS

Under § 362 of the Bankruptcy Code, the filing of a bankruptcy petition automatically triggers the automatic stay. 11 U.S.C. § 362. Subsection (a)(3) prohibits "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11

6

U.S.C. § 362(a)(3).  The purpose of the automatic stay is two-fold:

> (1) to protect the debtor, by stopping all collection efforts, harassment, and foreclosure actions, thereby giving the debtor a respite from creditors and a chance "to attempt a repayment or reorganization plan or simply be relieved of the financial pressures that drove him [or her] into bankruptcy;" and (2) to protect "creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors."

*Constitution Bank v. Tubbs*, 68 F.3d 685, 691 (3d Cir. 1995) (quoting *Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991)).

### A. *Denby-Peterson* Does Not Require Reversal of the Payment Order

In *University Medical Center*, the Third Circuit considered the precise issue in this case – whether the automatic stay under § 362(a) prohibits the government's post-petition withholding of Medicare payments to a healthcare provider in bankruptcy.  *University Medical Center*, 973 F.2d at 1072.  In that case, HHS withheld interim payments due to healthcare provider UMC for post-petition services on a theory of "contractual recoupment" (*id.* at 1071) for HHS's overpayment for prepetition services.  The Third Circuit determined such withholding to be a violation of the automatic stay.  *Id.* at 1075.  The Third Circuit emphasized the importance of the automatic stay to preserve a financially troubled Medicare provider with the opportunity to reorganize and continue Medicare benefits.  *Id.* at 1084.  The Third Circuit further noted that "we are not holding that HHS can never recover the reimbursement overpayments made to UMC, only that HHS cannot ignore the reach of the automatic stay in its effort to attain an administrative priority over UMC's other general creditors."  *Id.* at 1084-85.  The Bankruptcy Court relied on this precedent in enforcing the automatic stay and ordering the Government to pay True Health for post-petition services rendered.

The Government argues that the Third Circuit's decision in *Denby-Peterson* implicitly overruled the earlier ruling in *University Medical Center*. I disagree. *Denby-Peterson* does not overrule *University Medical Center,* and it is distinguishable from the facts in this case.

*Denby-Peterson* involved a secured creditor's failure, following notice of the debtor's bankruptcy, to return collateral (a car) lawfully repossessed pre-petition. It addressed the issue of whether the secured creditor violated the automatic stay by maintaining possession of the collateral. *Denby-Peterson*, 941 F.3d at 123. In its analysis, the Third Circuit stressed that "one of the automatic stay's primary purposes is to maintain the status quo between the debtor and [his] creditors." *Id*. at 126 (internal quotations omitted). The Third Circuit found that, although the secured creditor retained possession of the debtor's property post-petition, there was no violation of the automatic stay because there was no "post-petition affirmative act" by the creditor to exercise control over the debtor's property — the creditor was only preserving the "status quo" by continuing to withhold the property. *Id.* at 125-26. Thus, "exercis[ing] control over the [property of the estate] by keeping it in their possession after learning of the bankruptcy filing" does not qualify as a stay violation because it is "merely passively retain[ing] th[e] same possession" of property that the party had pre-petition.

The Bankruptcy Court distinguished *Denby-Peterson* in its decision confirming the Plan:

> The situation here is very different. The Government took action postpetition to obtain possession of the property of the debtors' estate by withholding payments for work performed by the debtors postpetition. Every time an invoice was submitted for payment, the Government made the determination not to pay that invoice. That is action post-petition; and, therefore, … the ruling in *Denby-Peterson* is simply not applicable here.

(D.I. 6-2 at 76:5-12). On appeal, the Government argues that, because its decision to suspend True Health and withhold reimbursements was made pre-petition, the decision to continue withholding post-petition payments is not an affirmative act — a requirement set forth in *Denby-Peterson* — but rather a preservation of the status quo. (D.I. 16 at 7). Even if CMS were

8

making a new individual determination not to pay each invoice, the Government argues, *Denby-Peterson* makes clear that a creditor's withholding of property is permitted because it is merely "keeping it in [the creditor's] possession." (*Id*. (citing *Denby-Peterson*, 941 F.3d at 126)).  The Government relies on the dictionary definition of withhold as "to hold back from action," "to keep in custody," or "to refrain from granting, giving, or allowing." (*Id*.)  By misconstruing withholding payment as an affirmative act, the Government asserts, the Bankruptcy Court made preservation of the status quo impossible.

The status quo argument is unavailing.  To the extent the Debtors continued to provide services to Medicare customers, notwithstanding the bankruptcy filing, the situation changed each day post-petition.  As the Bankruptcy Court aptly noted, the secured creditor in *Denby-Peterson* "only repossessed property in which it held a pre-petition security interest." (Adv. D.I. 93 at 4-5).  Here, the Government withheld post-petition payments for laboratory tests and services that True Health performed post-petition.  Thus, unlike *Denby-Peterson*, the Government "did not merely retain the same possession and control over the Debtor's pre-petition property.  Rather, by withholding Medicare payments for services performed post-petition, the [Government] engaged in affirmative acts to exercise control over post-petition property of the estate in violation of the automatic stay." (*Id*. at 5).  As True Health correctly points out, the automatic stay also prohibits "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case." (D.I. 18 at 10 n.3 (citing 11 U.S.C. § 362(a)(1))).  The Government's withholding of the Ordered Payments was a clear continuation of a "proceeding or other action" commenced before the commencement of the case.

*Denby-Peterson* does not mention *University Medical Center*.  Moreover, *Denby-Peterson* was not issued by an *en banc* panel and thus did not overrule *University Medical*

*Center* under the Third Circuit's internal guidelines. *See Internal Operating Procedures of the United States Court of Appeals for the Third Circuit* (2018) § 9.1; *Association of New Jersey Rifle & Pistol Clubs Inc. v. Attorney General New Jersey*, ___ F.3d ___, 2020 WL 5200683, at *4 (3d Cir. Sept. 1, 2020). In addition, I am persuaded that the facts of *Denby-Peterson* differ significantly from the facts at issue here. *University Medical Center* remains good law and binding precedent recognizing that withholding of Medicare payments for post-petition services performed by a healthcare provider in bankruptcy constitutes a violation of the automatic stay.

### B. Even Assuming the Payment Order Is Reversed or Vacated, the Government Failed to Establish Administrative Expense Status in Support of its Plan Feasibility Objection

In addressing the Government's Plan feasibility objection, the Bankruptcy Court noted:

> The Government continues that it should be able to recover payments without showing, under Section 503(b) of the Code, that the payments are an administrative claim. Notably, the Government cites no authority that it should be exempt from that provision of the Code, and the Court is not aware of any such exemption for the Government.

(D.I. 6-2 at 78:5-10). The Bankruptcy Court ruled, "The Government's claim to recover . . . is, in effect, a claim to recover for pre-petition claims for alleged fraud and overpayments that occurred pre-petition, and therefore constitute pre-petition claims." (*Id*. at 77:25-78:4).

According to the Government, the Bankruptcy Court erred in entering the Confirmation Order because the Plan was not feasible under § 1129(a)(11) of the Bankruptcy Code. Even a planned liquidation must be feasible, it argues, and in considering feasibility, "a bankruptcy court must evaluate the possible impact of the debtor's ongoing civil litigation." *In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012). The Government argues that the Bankruptcy Court should have taken into account the Government's high probability of success in the adversary proceeding, with the result that a return of the Ordered Payments in full will be required. As the Plan does not contain a claim reserve or other means for CMS to recover under

10

the Plan if a court orders return of the Ordered Payments, the Government argues, the Plan should not have been confirmed.  (D.I. 16 at 9-10; D.I. 20 at 8-11).

Conversely, True Health argues that the Government has never explained what regulation or provision of the Bankruptcy Code would require the return of the Ordered Payments, and the Government is merely attempting to circumvent the Bankruptcy Code's priority scheme and secure a finding that it would be automatically entitled to a return of the Ordered Payments if it were eventually successful.  (*See* D.I. 18 at 11).  To be returned in full, the Ordered Payments would have to qualify as an administrative expense of the Debtors' estates.  However, True Health asserts, the Ordered Payments do not represent a claim by the Government against the estate.  Rather, the Debtors had a contractual right to such payments for services actually rendered by the Debtors, and the Government presented the Bankruptcy Court with no evidence to the contrary.  (*See id.*)

Unlike unsecured claims governed by § 502 of the Bankruptcy Code, "requests for payment of administrative expenses are not entitled to the presumption of correctness that is accorded claims that prepetition creditors assert through proofs of claim.  An entity seeking allowance of an administrative expense has the burden of proof."  4 COLLIER ON BANKRUPTCY ¶ 503.04[1] (Richard Levin & Henry J. Sommers, eds. 16th ed.); *see In re SRC Liquidation, LLC*, 573 B.R. 537, 540 (Bankr. D. Del. 2017) ("The claimant bears the ultimate burden of establishing a valid administrative expense claim by a preponderance of the evidence.").  The Government argues that disputed administrative expense claims are not resolved at confirmation hearings, but rather after a separate notice and hearing.  (*See* D.I. 20 at 9).  However, a claimant has the burden even when it is simply requesting that a bankruptcy court estimate an administrative claim for the purpose of establishing a claims reserve.  *See In re FRG, Inc.*, 121

B.R. 451, 456 (Bankr. E.D. Pa. 1990) (allocation of the burden of proof in a claim estimation is the same as in deciding objections to proofs of claim).

The record supports True Health's arguments. Despite holding the burden of proof under § 503(b) of the Bankruptcy Code, the Government presented no evidence to demonstrate that the Ordered Payments represented (or could represent) claims entitled to administrative priority. As True Health points out, the Government stipulated not to offer any proof of any administrative expense claim in connection with its objection to the entry of the Confirmation Order. (B.D.I. 498 at 3-4). Moreover, the Bankruptcy Court found that the Ordered Payments were earned by the Debtors during the bankruptcy cases, which clearly undermines the Government's theory that it would be entitled to the return of the Ordered Payments:

> And I would also conclude that, in this case, contrary to the Government's position, the post-petition payments, if reversed, would not constitute unjust enrichment because the payments … made by the Government here were for work performed post-petition, and the Government has stipulated, for purposes of the confirmation hearing, that the debtors did not engage in any post-petition fraud or receive any post-petition overpayments; therefore, that objection is overruled.

(D.I. 6-2 at 76:20-77:3). Indeed, the record reflects that the only testimony at the hearing was that the Ordered Payments were made for services actually rendered. (*See id.* at 12:9-13:24, 21:7-16, 21:21-25).

The Government fails to explain how it is entitled to the return of the Ordered Payments under the Bankruptcy Code if the Payment Order is reversed. Absent a statutory mechanism to do so, such as proving an entitlement to a secured claim or an administrative expense, the Government has no automatic right to payment if it succeeds in its appeal; while the Government may have a claim against the Debtors' estate, that claim is not entitled to priority under the Bankruptcy Code. Having stipulated not to offer any proof of any administrative expense claim in connection with its objection to the entry of the Confirmation Order, the Government cannot

now claim that the Plan was not feasible on the basis that it might have an administrative expense claim for the return of the Ordered Payments. The Government did not present evidence, authority, or even a valid legal theory. Thus, the Bankruptcy Court did not err in overruling the Government's plan feasibility objection based on an inadequate administrative claim reserve.

>    **C.    The Bankruptcy Court Did Not Err in Determining that the Plan Was Proposed in Good Faith**

According to the Government, the Debtors have aimed throughout the bankruptcy case to extract money from the Government to pay other creditors, and, in doing so, the Debtors have not dealt with creditors with fundamental fairness, nor proposed the Plan with good intention. The Government further asserts that it is inconsistent with the Bankruptcy Code's objectives for a debtor to attempt to prevent a creditor from vindicating its proper rights under the Bankruptcy Code by taking actions that serve no purpose other than to moot an appeal.

A reorganization plan may be confirmed only if it "has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). *See, e.g., In re W.R. Grace & Co.*, 729 F.3d 332 (3d Cir. 2013). Under Third Circuit law, "good faith" requires that a "plan be 'proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and the purposes of the Bankruptcy Code.'" *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999) (quoting *In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988)); *see also In re PPI Enters. (U.S.), Inc.*, 228 B.R. 339, 347 (Bankr. D. Del. 1998) ("[C]ourts have held a plan is to be considered in good faith "if there is a reasonable likelihood that the plan will achieve a result consistent with the standards prescribed under the Code."). Courts have held that § 1129(a)(3) requires that a plan "(1) fosters a result consistent with the Code's objectives, (2) the plan has been proposed with honesty and

13

good intentions . . . and (3) there was fundamental fairness in dealing with the creditors." *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 609 (Bankr. D. Del. 2001) (internal citations omitted). "[G]ood faith is to be determined by the totality of the circumstances." *Sandy Ridge Dev. Corp. v. Louisiana National Bank (In re Sandy Ridge Dev. Corp.)*, 881 F.2d 1346, 1353 (5th Cir. 1989).

The Government argues that the Plan's failure to provide an adequate reserve or mechanism for recovery was intentional, and the Plan did not satisfy the good faith prerequisite of § 1129(a)(3) because it was intended to deprive the Government of its ability to recover the Ordered Payments if it prevailed in the automatic stay litigation. (D.I. 20 at 11). According to the Government, nothing in the Bankruptcy Code will preclude the Bankruptcy Court or an appellate court from reversing the Payment Order and ordering return of the Ordered Payments under principles of restitution and unjust enrichment. The Government asserts that allowing the Debtors to retain funds that were improperly received under a preliminary order, while depriving a remedy to the person forced to pay, defies any notion of fairness. (*Id*. at 12).

In my view, this argument misses the point. The Government failed to offer any legal authority or theory that would support an entitlement to the return of the Ordered Payments. The Government merely argues that the Debtors never had a right to the Ordered Payments, and that it has a right to a return of the Ordered Payments. This argument is irrelevant to any determination that the plan proponents (which included the Debtors' secured lenders and the official committee of unsecured creditors) proposed the Plan in good faith.

The Government asserts that the Debtors' lack of good faith is evident based on the fact that the estate has or had funds that could have been placed into a separate reserve and instead will be used to make a distribution to other creditors, even though nothing about the bankruptcy case warranted immediate consummation of the Plan and distribution of funds. Rather, "the rush

14

to distribute initial distributions appeared to be a deliberate effort to deprive the United States not just of recovery, but also of an opportunity to have the [adversary proceeding] decided on the merits." (*Id*. at 14).  The Government failed to introduce any evidence that the Debtors were deliberately seeking to avoid the Government's claim or to moot an appeal of the Payment Order.  Administering a liquidation case as quickly as possible is hardly unusual; such a strategy reduces costs and professional fees and usually offers the best possible chance for any recovery by creditors.  Mere supposition that the bankruptcy case was rushed in order to preclude the Government's recovery is insufficient to support a finding that the Plan was proposed in bad faith.

In support of plan confirmation, including the good faith requirement of § 1129(a)(3), the Debtors filed a memorandum in support of confirmation and a declaration.  (B.D.I. 507, 508).  The uncontroverted evidence attests that the Plan was proposed with the honest intention of maximizing value for the Debtors, their estates, and their creditors.  The Plan provides for a litigation trust that is the best chance for recovery for unsecured creditors who would otherwise receive nothing.  The Court finds no error in the Bankruptcy Court's determination that the Plan was proposed in good faith, and the record reflects that the Government failed to introduce any evidence to the contrary.

### D. Equitable Mootness

In its answering brief, True Health suggests that the appeal should be dismissed on the basis of equitable mootness, as the Confirmation Order was not stayed and the Plan has been substantially consummated.  True Health, however, did not file a motion to dismiss on this basis.  Having now decided the appeal on the merits, I need not consider whether the doctrine of equitable mootness should apply here.  Even if I were to consider True Health's request for dismissal on this basis, I would not grant it.  A court must apply the doctrine of equitable

15

mootness "with a scalpel rather than an axe . . . , a court may fashion whatever relief is practicable instead of declining to review simply because full relief is not available." *Tribune Media Co. v. Aurelius Capital Mgmt.*, 799 F.3d 272, 278 (3d Cir. 2015). As reflected in the record of the confirmation hearing, all parties agreed that, if the Government succeeds in the adversary proceeding and proves that it holds an administrative expense for the Ordered Payments, it would likely receive some recovery under the Plan. As Debtors' counsel stated:

> The plan sets forth very clearly, in accordance with the Code and the rules, the ways in which they can recover it. They filed claims. If they are able to be successful on appeal – we don't think that they will be – but if they are successful on appeal, they will then have to go through the claims allowance process and prove up an administrative claim, to be able to recover . . .

(D.I. 6-2 at 72:18-25). As the Bankruptcy Court similarly noted, there is "a process that can happen through the claims process, whether it's a pre-petition claim or a post-petition claim." (*Id*. at 63:2-4). The Court agrees with the Government that, because the liquidation trust established under the Plan has or is likely to have some assets that could be used to make some repayment in the event of a successful administrative expense claim, some relief remains possible, and this appeal is not equitably moot.

## V.  CONCLUSION

For the reasons set forth herein, the Confirmation Order is affirmed. A separate order will be entered.